UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**TERRANCE CLARKE**                                                                                 **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 4:23-CV-55-JHM**

**GRAYSON COUNTY DETENTION CENTER** *et al.*                   **DEFENDANTS**

**MEMORANDUM OPINON AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening of this action pursuant to 28 U.S.C. § 1915A and for consideration of Plaintiff's "motion for immediate injunction" (DN 12). For the reasons set forth below, the Court will deny the motion as moot, allow some claims to proceed, dismiss other claims, and allow Plaintiff the opportunity to file an amended complaint.

**I.**

Plaintiff Terrance Clarke was formerly incarcerated as a pretrial detainee at Grayson County Detention Center (GCDC).[1] He sues GCDC; GCDC Jailer Jason Woosley; GCDC Officer David Gary; Roy Washington, medical provider; and Nurse Gary Skaggs.[2] Plaintiff sues the individual Defendants in both their official and individual capacities.

Plaintiff first complains about this his conditions of confinement at GCDC. Plaintiff alleges that Defendants require him to "sleep less than 6 inches from floor level without cots/boats." Plaintiff next alleges that Defendants require him to sleep in overcrowded cells which are designed for "4 inmates . . . but pack . . . up to 10 inmates at times." Plaintiff alleges that

---

[1] On October 12, 2023, Plaintiff filed a notice indicating that he been transferred to another jail (DN 14).
[2] Plaintiff initiated this action by filing a handwritten complaint in the Southern District of Indiana. Upon transfer to this Court, the Court directed Plaintiff to file his complaint on a Court-supplied form. Plaintiff complied by filing two nearly identical complaints in this action, DNs 1-3 & 1-5. The Court considers DN 1-3 to be the operative complaint in this action.

Defendants created fire, health, and safety hazards because there is no way for inmates to enter or exit a cell in an emergency without injuring an inmate or staff because of the overcrowding . . . ." Plaintiff states that Defendants put his life in danger by placing him in an overcrowded cell without cameras.  He continues:

> They do not punish inmates for violent physical altercations instead they promote the violence by moving those inmates to other overcrowded cells to create more altercations. They have also blocked access to the PREA hotline number within the jail causing me to fear of being sexually abused . . . .

Plaintiff also alleges that Defendants have provided him inadequate access to the to the law library.

Plaintiff next states:

> Defendants showed favoritism and discrimination against federal detainees by denying them access to programs, education, church/religious services, activities, hygiene and treatment.  The red side and trustee cells receive better hygiene, food . . . get to attend church/religious services, programs for education, furthering education, re-entry, parenting, drug and alcohol and mental health program programs.  While the green, gray, and brown side are forced to remain in a small violent overcrowded environment every day and only go to recreation 4 hours out of a week.

Plaintiff further alleges that Defendants GCDC, Woosley, and Gary (and other non-defendant officers) violated his rights by retaliating against him and disciplining him for filing a civil suit by:

> taking my privileges and placing me in disciplinary segregation without proper due process rights, fair hearings, notification of charges, copy of charges nor incident reports at all, right to face my accuser, right to be present at hearing, right to make a statement on my own behalf, right to call witnesses on my behalf . . . denying my rights to appeal . . . .

Plaintiff also alleges that Defendants GCDC, Woosley, Gary, Washington, and Skaggs (and other non-defendant officers):

> denied and neglected my chronic/necessary medical care issues intentionally knowing I can suffer from significant harm or death from the following chronic

> care assessment screening, blood/lab work for medication levels, A1 C levels (being I was diagnosed as borderline diabetic in butts county jail federal holding facility in Jackson, GA, before being housed here). I notified medical upon arrival of all diagnoses: seizures, atrial fibberalation, borderline diabetes, kidney failure, obesity, blood clots, pain from a fully ruptured [illegible] tendon and knee surgery that needed continuing care of physical therapy and another surgery to remove the metal cable from my left knee before or after surgery because excruciating pain if not removed. I wrote several medical requests and grievances and was denied any time of medical care treatment.
>
> . . . .
>
> Defendants charged me for my medical requests but gave me no treatment or simply refused to see me. Now I am a Type 2 Diabetic and still in excruciating pain of my left leg, and being illegally charged for seeing a doctor when there is no medical staff here with those certifications or degrees.
>
> . . . .
>
> Defendants have ignored, neglected, disregarded and acted unprofessional towards me and all medical records sent by Dr. Joseph Randolph orthopedic surgeon at Orthoindy, the latest being 10 pages of medical records.

Plaintiff states that these allegations show that Defendants have violated "my 4th Amendment from protection of illegal searches/seizures, 5th and 14th [] Amendment rights to due process of law, equal protection of the law, and cruel and unusual punishments, and 8th [] Amendment right to adequate medical care and treatment. . . ."

As relief, Plaintiff seeks damages and injunctive relief in the form of a transfer to another jail. Plaintiff also requests a transfer in his "motion for immediate injunction" (DN 12).

**II.**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

*See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S.

635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. GCDC and Official-Capacity Claims

The Court first observes that Defendant GCDC is not an entity subject to suit under § 1983 because municipal departments, such as detention centers, are not suable under § 1983. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Servs.*, 238 F.3d 422 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, Grayson County is the proper Defendant. Moreover, Plaintiff's official-capacity claims are actually brought against the remaining Defendants' employer, which Plaintiff indicates is also Grayson County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

A municipality such as Grayson County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1971); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

As set forth below, the Court finds that Plaintiff has only stated one actionable constitutional claim in the complaint – a Fourteenth Amendment due process claim regarding his

5

placements in segregation. Nothing in the complaint, however, indicates that these alleged unconstitutional placements in segregation were due to a custom or policy of Grayson County.

Thus, the Court will dismiss Plaintiff's claims against GCDC and his official-capacity claims against the remaining Defendants for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

#### 1. Fourth, Fifth, and Eighth Amendments

Plaintiff asserts that Defendants violated his rights under the Fourth and Eighth Amendment. However, it is the Fourteenth Amendment which provides protection similar to those provided by the Fourth and Eighth Amendments to pretrial detainees. *See, e.g., Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010) (holding that the Fourth Amendment applies to pretrial detainees until the detainee has been arraigned); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). (holding that is the Fourteenth Amendment that provides to pretrial detainees protections similar to those provided by the Eighth Amendment to convicted prisoners). Plaintiff's Fifth Amendment claim fails because the Fifth Amendment circumscribes only the actions of the federal government. *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).

Thus, the Court will dismiss Plaintiff's Fourth, Fifth, and Eighth Amendment claims for failure to state a claim upon which relief may be granted.

#### 2. First Amendment Claims

##### a. Retaliation

Plaintiff alleges that Defendants Woosley and Gary retaliated against him by placing him in disciplinary segregation for filing grievances and a civil suit. To state a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an

6

adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Even if Plaintiff's allegation satisfies the first and second prongs of a retaliation claim, it fails to satisfy the third prong. "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). A plaintiff may rely on circumstantial evidence, but must still provide "specific, nonconclusory allegations" linking his conduct to a defendant's retaliatory act. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (requiring "concrete and relevant particulars"). A plaintiff may allege a chronology of events from which a defendant's retaliatory animus could reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citations omitted). Other evidence courts examine to determine causation include statements by defendants or the disparate treatment of other prisoners. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010); *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010).

Here, the complaint does not contain allegations of temporal proximity or disparate treatment. Plaintiff has only provided conclusory allegations of retaliatory motive and has not provided any evidence - direct or circumstantial - in support. "By 'merely alleg[ing] the ultimate fact of retaliation," Plaintiff's argument for causation, and thus for actionable retaliation, fails." *Flournoy v. Hemingway*, No. 20-13130, 2021 U.S. Dist. LEXIS 93709, at *22 (E.D. Mich. May 18, 2021) (quoting *Murray*, 84 F. App'x at 556).

7

For these reasons, the Court concludes that Plaintiff's retaliation claims must be dismissed for failure to state a claim upon which relief may be granted.

### b. Denial of Access to Courts

The Court next turns to Plaintiff's allegation that he was denied adequate access to the law library at GCDC. Prisoners have a constitutional right of meaningful access to the courts under the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Meaningful access to the court under the First Amendment will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered. *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). That is, Plaintiff must plead actual injury, and no actual injury occurs without a showing that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Plaintiff does not allege any actual injury to his criminal defense or any past or pending litigation due to the alleged lack of access to legal resources at GCDC. Therefore, Plaintiff's access-to-courts claims must be dismissed for failure to state a claim.

### 3. Fourteenth Amendment Claims

#### a. Conditions-of-Confinement

Plaintiff's main allegations regarding his conditions of confinement is that GCDC is so overcrowded that it is unsafe and that he is forced to sleep "less than 6 inches from floor level

8

without cots/boats." A Fourteenth Amendment conditions-of-confinement claim has two prongs. To satisfy the first objective prong, a plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, a plaintiff must show that defendants acted "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836).

The Court need only address the first prong with regard to this claim. Contemporary standards of decency determine whether conditions of confinement meet this standard. *See, e.g.*, *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "[O]vercrowding is not, in itself, a constitutional violation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). Plaintiff's allegation that he was housed in an overcrowded cell and required to sleep on the floor is not a deprivation of the minimal civilized measure of life's necessities. *See, e.g.*, *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) (forcing inmates to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation); *Sanders v. Kingston*, 53 F. App'x 781, 783 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners, and [plaintiff] does not cite one."); *Edwards v. Warren Cnty. Reg'l Jail*, No. 1:17-CV-P137-GNS, 2018 U.S. Dist. LEXIS 6355, at *9 (W.D. Ky. Jan. 16, 2018) (finding that "a prisoner has no right to sleep on an elevated bed").

To the extent Plaintiff alleges that the overcrowded conditions caused inmate violence, he does not allege that he suffered any harm. *See, e.g.*, *Benjamin v. Fraser*, 343 F.3d 35, 51 n.17 (2d Cir. 2003) ("To establish the deprivation of a basic human need . . . an inmate must show 'actual or imminent harm.'") (quoting *Lewis v. Casey*, 518 U.S. at 350); *Sander v. Duchak*, No. 3:18-cv-102, 2018 U.S. Dist. LEXIS 157706, at *12 (S.D. Ohio Sept. 17, 2018) (holding allegation that overcrowding at jail caused unsafe and dangerous environment "to the point that there are numorous [sic] physical altercations, assaults, and rapid acts of violence" failed to state a claim because the plaintiff did not allege "that any of the potential dangers he identified actually caused him any harm") (citing *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003)).

For these reasons, the Court will dismiss Plaintiff's Fourteenth Amendment conditions-of-confinement claims for failure to state a claim upon which relief may be granted.

### b. Equal Protection

The Court next turns to Plaintiff's allegation that Defendants deprived Plaintiff and other federal pretrial detainees access to the same programs, education, church/religious services, activities, and hygiene that state inmates had access to, which the Court construes as a Fourteenth Amendment equal-protection claim.

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, (1992).

Here, Plaintiff seems to allege that, as a federal pretrial detainee, he was treated differently than state inmates. As a federal pretrial detainee, however, Plaintiff is not similarly situated to state inmates also being held at GCDC. Thus, his equal-protection claim must be dismissed for failure to state a claim upon which relief may be granted. *See, e.g.*, *Srader v. United States*, No. 23-3178-JWL, 2023 U.S. Dist. LEXIS 159700, at *17 (D. Kan. Sept. 8, 2023) (recognizing that "convicted prisoners are not similarly situated to pretrial detainees for equal protection purposes") (citation omitted); *Price v. Deloy*, No. 08-444-GMS, 2011 U.S. Dist. LEXIS 65739, at *25 (D. Del. June 17, 2021) (dismissing equal protection claim because pretrial detainees are not similarly situated to sentenced inmates); *McKinney v. Kilgore*, No. 1:17-cv-00787-MHH-TMP, 2017 U.S. Dist. LEXIS 220566, at *13 (N.D. Ala. Oct. 20, 2017) (holding pretrial detainees are not similarly situated to jail trustees); *Slade v. Hampton Roads Reg'l Jail*, 303 F. Supp. 2d 779 (E.D. Va. 2004) (holding pretrial detainee is not "similarly situated" to convicted inmates).

    **c. Deprivation of a Property Interest**

Finally, the Court turns to Plaintiff's allegation that "Defendants charged me for my medical requests but gave me to treatment or simply refused to see me." The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim for the deprivation of property without due process pursuant to § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt*, 451 U.S. at 543-44. The law of this circuit is in accord. The Sixth Circuit has held that "[i]n § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the

11

plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Thus, this claim must also be dismissed for failure to state a claim upon which relief may be granted.

### d. Disciplinary Segregation

Although the complaint is not clear, Plaintiff seems to alleges that Defendants Woosley, Gary, and other non-defendant individuals, violated his rights when they placed him in disciplinary segregation from August 12, 2022, until September 10, 2022; from October 12, 2022, through December 12, 2022, and from May 31, 2023 until at least June 14, 2023 - the date Plaintiff avers he placed the operative complaint in the GCDC mailing system - without receiving procedural due process.

Upon consideration, the Court will allow Plaintiff's Fourteenth Amendment procedural due process claims based upon his placements in segregation to proceed against Defendants Woosley and Gary in their individual capacities. *See Johnson v. Grayson Cnty.*, No. 21-5772, 2022 U.S. App. LEXIS 14816 (6th Cir. May 27, 2022).

### e. Denial of Medical Care

Plaintiff next alleges that Defendants Woosley, Gary, Washington, and Skaggs (and other non-defendant officers):

> denied and neglected my chronic/necessary medical care issues intentionally knowing I can suffer from significant harm or death from the following chronic care assessment screening, blood/lab work for medication levels, A1 C levels (being I was diagnosed as borderline diabetic in butts county jail federal holding facility in Jackson, GA, before being housed here). I notified medical upon arrival of all diagnoses: seizures, atrial fibberalation, borderline diabetes, kidney failure,

12

> obsesity, blood clots, pain from a fully ruptured [illegible] tendon and knee surgery that needed continuing care of physical therapy and another surgery to remove the metal cable from my left knee before or after surgery because excruciating pain if not removed. I wrote several medical requests and grievances and was denied any time of medical care treatment.

A pretrial detainee must satisfy two elements for a claim based on deliberate indifference to a medical need under the Fourteenth Amendment: (1) he "had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner,* 14 F. 4th at 596.

Here, Plaintiff has listed several diagnoses that could be considered sufficiently serious medical needs under this standard. However, he does not set forth any specific actions taken or not taken by Defendant Woosley, Gary, Washington, or Skaggs in regard to each diagnosis which shows that any Defendant acted deliberately or recklessly in the face of an unjustifiable risk of harm. Nonetheless, before dismissing Plaintiff's medical care claims, the Court will provide him the opportunity to file an amended complaint. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) [of the Federal Rules of Civil Procedure,] a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

## IV.

The Court next turns to Plaintiff's "motion for immediate injunction" in which Plaintiff seeks immediate transfer to another facility (DN 12). In it, he states that if he is not transferred Defendants will continue "to have free reign to abuse their power" to cause him harm and retaliate against him. Because the record reflects that Plaintiff has been transferred to another jail, the Court

will deny this motion as moot. *See, e.g.*, *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

## V.

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. The Court will allow Plaintiff's Fourteenth Amendment procedural due process claims to proceed against Defendants Woosley and Gary. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

2. The Court **DISMISSES Plaintiff's claims against GCDC; his official-capacity claims against all Defendants; his First, Fourth, Fifth, and Eighth Amendment claims; and his Fourteenth Amendment claims based upon his conditions of confinement, equal protection, and medical care charges pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted**.

3. Plaintiff's motion for an "immediate injunction" (DN 12) is **DENIED as moot.**

4. Within **30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint in which he makes **specific allegations** against each Defendant whom he alleges denied him medical care for a serious medical need. **Plaintiff must describe what specific action(s) each Defendant took or failed to take with respect to a specific diagnosis which shows deliberate or reckless indifference to a serious medical need in the face of an unjustifiably high risk of harm.**

5. If Plaintiff timely files an amended complaint, the Court will conduct an initial review of it pursuant to 28 U.S.C. § 1915A. If Plaintiff fails to timely file an amended complaint, the

Court will dismiss Plaintiff's medical claims for the reasons set forth herein and will enter a Service and Scheduling Order to govern Plaintiff's continuing claims.

      6. The **Clerk of Court** is **DIRECTED** to send Plaintiff a § 1983 prisoner complaint form with the words "Amended Complaint" and this case number written in the caption for Plaintiff's use if he decides to amend the complaint.

      7. The **Clerk of Court** is further **DIRECTED** to **terminate GCDC as a party to this action.**

Date: October 20, 2023

Joseph H. McKinley Jr., Senior Judge<br>
United States District Court

cc:    Plaintiff, *pro se*  
        Defendants Woosley and Gary  
        Grayson County Attorney  
4414.011